LEE COMBS v. B. JACKSON and Another.[1]

October 18, 1897.

Nos. 10,684—(85).[2]

**Municipal Corporation — Contractor's Bond—Who may Enforce — Subcontractor—Laborer—Evidence.**

J. having entered into a contract with the city of Minneapolis to pave a certain street, he and a surety executed a bond to the city, pursuant to Laws 1895, c. 354. J. sublet a part of the work to C. A. furnished to C. certain material, which was used in the execution of the contract. Plaintiff's assignors, six in number, severally performed labor for A. in preparing the material furnished by him to C. In an action on the bond to recover for the labor performed for A. by plaintiff's assignors, *held:*

That the evidence justified a finding that A. was a "subcontractor," within the meaning of the statute, and, as such, furnished the material in the execution of the contract between J. and the city.

That plaintiff's assignors, having performed labor on this material at the request of a subcontractor, had a right of action on the bond, although, when they performed the work, they themselves did not have in mind the contract between J. and the city, and did not perform the labor with the particular intention of aiding in the execution of that contract.

That the evidence furnished sufficient basis for determining how much was due each of plaintiff's assignors for labor performed by them severally on the material furnished by A. to C., and which was actually used in the execution of the contract with the city.

Appeal by defendants from a judgment of the municipal court of Minneapolis in favor of plaintiff for $156.58, entered pursuant to findings by Holt, J. Affirmed.

[1] Reported in 72 N. W. 565.          [2] October, 1897, term.

*Edgerton, Wickwire & Rice,* for appellants.
*O. Mosness* and *Lee Combs,* for respondent.

MITCHELL, J.

This action was brought on a bond executed to the city of Minneapolis by defendant Jackson, as principal, and the defendant company, as surety, pursuant to the provisions of Laws 1895, c. 354, and as part of, and auxiliary to, a contract entered into by Jackson with the city to pave a part of Western avenue.

The material provisions of the statute are that the bond to be given by the contractor in such cases shall be—

"For the use of all persons who may perform any work or labor or furnish any skill or material in the execution of such contract, conditioned to pay as they become due all just claims for all work and labor performed and all skill and material furnished in the execution of such contract"; also that "whoever shall perform * * * any work or labor or furnish * * * any skill or material * * * particularly for such contract and used therefor in the execution of such contract at the request of the contractor * * * or of any subcontractor * * * shall be considered a party in interest in said bond and may bring an action thereon for the reasonable value or agreed price, as the case may be, of the work or labor performed or skill or material * * * furnished in the performance of such contract."

The material condition of the bond, as executed, is that the principal, Jackson,

"Shall well and truly pay as they become due all charges and claims for all work and labor performed, and skill and material furnished, in the execution of said contract."

Where a bond is thus given, pursuant to the provisions of a statute, it must be construed in the light of the statute, and extended, as well as limited in its scope, to those cases contemplated by the statute, unless violence would be done to the language of the bond by such construction. In this case there is no discrepancy between the provisions of the statute and the conditions of the bond, and we therefore construe the two as coincident and coextensive.

The two principal questions in the case are—First, whether the demands of plaintiff's assignors for labor fall within the provisions

of the statute; and, if so, second, whether the evidence furnishes a sufficient basis for determining how much is due on the bond to each of plaintiff's several assignors.

The general facts may be stated thus: Defendant Jackson entered into a contract with the city to construct a pavement on a part of Western avenue, and gave the bond in suit. Jackson then sublet a portion of the work to Canney Bros. One Anderson, who was operating a stone quarry, got out and sold and delivered to Canney Bros. 450 cubic yards of crushed rock, which was by them actually used in the execution of their subcontract with Jackson. Anderson employed over 30 men in his quarry, who, among them, performed the labor of quarrying and crushing the rock delivered to Canney Bros. Anderson having failed to pay these men in full for their labor, 16 of them assigned their claims to this plaintiff. The trial court found that plaintiff was entitled to recover, in whole or in part, on six of these claims, but disallowed the other ten, on the ground that, while the amounts were due from Anderson, the evidence did not show how much was due to each man severally for work performed in the preparation of the rock actually furnished for, and used in the execution of, the contract between Jackson and the city. So far there is no dispute as to the facts.

The first point made by appellant's counsel is that Anderson was not a subcontractor, but a mere "material man," and hence those who performed labor for him in making or preparing the material have no right of action on the bond, although the material was actually used in the execution of the contract with the city; that, by its terms, the statute gives a right of action on the bond only to those who performed work, or furnished material, "at the request of the contractor, * * * or of any subcontractor"; that, while Anderson himself might have had a right of action on the bond, because he furnished the material at the request of a subcontractor, yet, inasmuch as he himself was a mere material man, any right of action on the bond ended with him, and did not extend to those who performed labor for him.

As we understand counsel, the distinction which they make between a "contractor" or "subcontractor" and a mere "material man" is that the former is one who, under contract with the owner,

or the original contractor, performs labor or furnishes material especially for a particular purpose, while the latter is one who sells material under an ordinary sale on credit, without reference to the building or other structure in which it is to be used. Conceding, without deciding, that counsel's construction of the statute, as well as his distinction between a contractor and a mere material man, is correct, still we are of opinion that the evidence justified the court in finding that Anderson was a "subcontractor"; which was, in substance, what he did find. Every material man (that is, any one who furnishes material which is actually used in a particular structure) may not be a "contractor" or "subcontractor," yet such a material man may be a "contractor" or "subcontractor," even under counsel's own definitions.

While the evidence on the point is neither very full nor very clear, yet, after an examination of the entire record, we have arrived at the conclusion that it was sufficient to justify the conclusion that, after Canney Bros. made, or contemplated making, their subcontract with Jackson, they entered into an arrangement or agreement with Anderson to furnish them crushed rock, to be used in the execution of their subcontract, and that Anderson, in pursuance of such arrangement or agreement, got out and furnished the rock for that purpose. The terms of that agreement are not fully proven; but that was not necessary. It was sufficient if it was made to appear that there was a contract between Canney Bros. and Anderson, by which the latter was to furnish the former rock to be used in the execution of their paving contract. That fact, if proven, would establish the necessary contractual relation between them, and constitute Anderson a "subcontractor," even under counsel's construction of the statute. The fact that, during the time Anderson was getting out and furnishing this rock to Canney Bros., he got out and sold to others a limited amount of stone, as the evidence shows, is not inconsistent with the proposition that the rock which he furnished to Canney Bros. was so furnished by him in the capacity of "subcontractor." This fact might have some bearing on the question, but it would be by no means controlling. Its chief effect would be to render it more difficult to trace the

labor of plaintiff's assignors into the material furnished to Canney Bros.

2. There is no evidence that plaintiff's assignors, when they performed labor in quarrying and crushing the rock, had particularly in mind any contract between their employer, Anderson, and Canney Bros., or that they performed the labor for the specific or particular purpose of aiding in the execution of that contract, or in reliance upon it as security for the payment of their labor, or that they at that time knew where, or for what purpose, the rock was to be used. It is claimed, upon this state of facts, that although Anderson may have gotten out and furnished this material as subcontractor, in the execution of the contract between Jackson and the city, and the material was so used, yet plaintiff's assignors had no right of action on the bond, because they did not perform the labor "particularly for such contract."

It seems to us that counsel claims too much for the word "particularly," which is found in the clause of the statute providing who may bring action on the bond, but not in the prior clause, defining the persons for whose use it is to be given. We do not think that the use of that word in the later clause was designed to restrict or limit the provisions of the prior one. If Anderson, as subcontractor, got out and furnished this rock for this paving contract, and it was actually used therefor, then those who performed labor for him in preparing the material may maintain an action on the bond, although, while doing the work, they may not have had in mind the purpose of aiding in the execution of the contract between Jackson and the city. Any other construction would, in a great measure, defeat the manifest purpose of the statute, and deprive of its benefits a large class of persons who stand most in need of its protection. For example: suppose Anderson had been engaged in simultaneously getting out crushed rock, in fulfillment of different subcontracts with several different contractors with the city for paving streets; how could any one of those who performed the work for Anderson prove that he performed such labor upon the particular material used in one of the contracts, with special reference to the execution of that contract, rather than of any of the others?

The statute must receive a reasonable and practical construction, so as, if possible, to effect the purposes for which it was enacted.

3. It is further urged that the evidence furnishes no basis upon which to determine how much is due on the bond to any one of plaintiff's assignors; that is, how much of his individual labor was performed on the material furnished and used in the execution of the contract between Jackson and the city. Of course, we recognize the fact that the causes of action in favor of plaintiff's assignors were several, and that each must be established by evidence. There was quite a large number of men (over 30), all working together in a quarry, and, as already stated, the evidence disclosed that, concurrently with getting out and furnishing the rock to Canney Bros., some rock was gotten out which was sold to other parties, or for other purposes; also, that the entire labor was performed altogether,—that is, the laborers did not separate it, by working a certain time on the stone furnished to Canney Bros., and then on the stone furnished to others, or for other purposes. But there was evidence tending to show how much stone was gotten out altogether during the time the stone was being prepared for and furnished to Canney Bros., how much of this was furnished to and used by them in the execution of this paving contract, and how much was sold to other parties, or for other purposes; also, how many hours each man employed in the quarry worked during the time the stone furnished to Canney Bros. was being gotten out. We are of opinion that this furnished a basis for determining how much of each man's labor went into the stone furnished to Canney Bros. It was the only way of proving the facts which, under the circumstances, the case admitted of.

The presumption must obtain that each man's labor went into the whole of the rock gotten out in the proportion which his time bears to the aggregate time of all the men who were engaged in the quarry, and that the portion of his time which went into the stone furnished Canney Bros. bore the same proportion to his whole time as the amount of stone furnished to Canney Bros. bore to the entire amount of stone gotten out during the same period. If such a presumption cannot be indulged in, in many instances laborers who

are actually entitled to maintain an action on these bonds would never be able to prove their case.

There was no abuse of discretion in the court's allowing the plaintiff to amend his complaint on the trial.

While the court may have given the wrong reason for refusing to permit defendant's counsel to cross-examine the witness Canney as to whether the contract between him and Jackson was in writing, yet the ruling was, at most, error without prejudice. As we understand the record, it was an undisputed fact that Jackson sublet to Canney Bros. a part of the work included in his contract with the city. This created the necessary contractual relation between him and them. Further than that, the particular terms of the contract between them were wholly immaterial.

This covers all the assignments of error urged in the brief which we deem necessary to notice.

Judgment affirmed.