GRAZZINI BROS. & COMPANY v. BUILDERS CLINIC, INC.
CITY OF MINNEAPOLIS AND OTHERS, THIRD-PARTY
DEFENDANTS.
PACIFIC NATIONAL INSURANCE COMPANY AND
ANOTHER, THIRD-PARTY DEFENDANTS.

160 N. W. (2d) 259.

July 5, 1968—No. 41,013.

*Keith M. Stidd,* City Attorney, and *Paul T. Aitken,* Assistant City Attorney, for appellant.

*Meagher, Geer, Markham & Anderson, Robert M. Frisbee,* and *O. C. Adamson II,* for respondent.

PETERSON, JUSTICE.

This is an appeal from a summary judgment granted in Municipal Court of Hennepin County in favor of a surety upon a general contractor's bond[1] posted under its building construction contract with a mu-

---

[1] Minn. St. 574.26 provides in part: "No contract with the state, or with any municipal corporation or other public board or body thereof, for the doing of any public work, shall be valid for any purpose, unless the contractor shall give bond to the state or other body contracted with, for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials * * *, conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill, materials * * * for the completion of the contract in accordance with its terms, for saving the obligee harmless from all costs and charges that may accrue on account of the doing of the work specified * * *."

Section 574.29 provides in part: "Any person entitled to the protection of such bond may maintain an action thereon for the amount due him. He shall notify the obligee named in the bond of the beginning of such action, giving the names of the parties, describing the bond sued upon, and stating the amount and nature of his claim."

Section 574.31 provides in part: "No action shall be maintained on any

nicipality, the municipality claiming indemnity against the surety for any liability arising out of the claims of a subcontractor against the general contractor for labor and materials not paid by the general contractor.

Builders Clinic, Inc., contracted with the city of Minneapolis to build a fire station for a stated bid price, saving to the city the option of ordering extra work at a contractually determinable price. The contract, as required by statute, provided that Builders Clinic would indemnify the city "against all loss by reason of the failure of said first party in any respect to fully perform all obligations under this contract," which included its express obligations to "pay all persons furnishing labor and/or material to said first party in and about the performance of this contract" and to "indemnify said second party against any and all claims, liens and claims of liens for labor performed or material furnished as aforesaid." The bond posted by Builders Clinic as principal with Pacific National Insurance Company as surety underwrote that obligation. The city was represented by an architect, Alie E. Tichich Associates, a corporation, and by its city engineering staff, particularly one Helge G. Olson.

Plaintiff, Grazzini Bros. & Company, installed epoxy facing and facia panels on the municipality's public building, completing the work on January 31, 1963. Upon failure of Builders Clinic to pay more than $1,000 upon its statement for $3,827 as the alleged value of such work and materials, Grazzini sued Builders Clinic, Inc. Builders Clinic asserted variously by answer and third-party complaint against the city of Minneapolis, Tichich, and Olson that "a large part" of the Grazzini claim represented additions ordered by or on behalf of the city; that due to the negligence of Tichich and Olson in failing to process appropriate change orders submitted by it for approval, such extra work had not been approved; that there were deductions and additions owing it from the

such bond unless within 90 days after the completion of the contract and acceptance thereof by the proper public authorities, the claimant shall file a written notice specifying the nature and amount of his claim and the date of furnishing the last item thereof, * * * in the office of the auditor of the county * * * in which such municipal corporation, public board or body is situate * * *; nor unless the action is begun within one year after the filing of such notice."

city on the contract in the net amount of $2,383.90, a "large part" of which represented amounts due to Grazzini; and that if any amount were adjudged due Grazzini, $2,383.90 of any such amount should be adjudged due and owing from the city, not it. The city, answering defendant's third-party complaint, variously denied that subject work by Grazzini was ordered or authorized by it; denied that Olson was negligent or that any negligence of Tichich was imputable to it; asserted Builders Clinic's liability to it under the contract and under the terms of its surety bond; and otherwise generally denied liability.[2] The city, by third-party complaint against Pacific National Insurance Company, and Tichich asserted that Grazzini installed the epoxy facing and facia panels upon its building in performance of Builders Clinic's construction contract; that Builders Clinic owed Grazzini the sum of $2,827 as the unpaid balance of the price of such labor and materials; and that the city is entitled to recover from the surety any amount Grazzini or Builders Clinic might recover from it. The city further alleged that the architect had no authority to give written approval of extra work other than as specifically authorized by the city and that any negligence of any third-party defendant was the result of the negligence and breach of the architect's contract with the city. Tichich answered the cross-complaints against it by asserting that, if there was negligence in failure to obtain a change order, it was the negligence of Builders Clinic; that there was a verbal change order approved by all necessary parties; and that the additions in fact enhanced the value of the fire station building. Summary judgment was granted in favor of Pacific National on the appropriate ground that the complex of pleadings and affidavits of the parties raised no genuine issue of fact of such nature as to invoke the coverage of the construction bond, without which the surety was not properly a party to the litigation.

It is undisputed, at the outset, that Grazzini at no time filed a notice of claim as required by Minn. St. 574.31.[3] Grazzini, of course, has asserted

---

[2] Both the city and Olson, by cross-complaint against Alie E. Tichich Associates, alleged nonperformance of the architectural contract and sought judgment against it for any sum which might be recovered by either Grazzini or Builders Clinic against them.

[3] See footnote 1, *supra.*

no claim against the city or the surety. Compliance with the statute is a condition precedent to an action on the bond by a materialman.[4] Ceco Steel Products Corp. v. Tapager, 208 Minn. 367, 294 N. W. 210. Grazzini itself has not, in any event, asserted any claim against the city either upon the bond or independent of it. The ultimate effect of the city's own claim against the surety, however, would be to extend indirectly the protection of the bond to a third-party beneficiary who has failed to avail himself directly of its protection.

It is reasonably clear, moreover, that in the posture of these pleadings the city itself can prove no facts under which it will itself sustain loss or damage. First, if Grazzini itself were to fail to establish any right of recovery against Builders Clinic, all other actions would automatically fall, for they are derivative. Second, even if Grazzini were to recover against Builders Clinic, it establishes no right against the city for which the surety is bound. If Builders Clinic were to prove that Olson or Tichich were negligent and that the city was vicariously liable for the negligence of either of them, it would nevertheless establish no right of the city for indemnity from the surety for the simple reason that the bond undertakes to protect the city from the *general contractor's* negligence and not from its own negligence. If Builders Clinic could not prove the alleged negligence of Tichich or Olson or could not establish the city's liability for any such negligence, the city could have no right of indemnity for the simple reason that it had lost nothing.[5] The city has no right under the bond to

---

[4] Neither did the city assert such noncompliance in its answer to the contractor's third-party complaint. The city does argue that the surety has waived "the defense of non-compliance by claimant with M.S.A. 571.31" by failure to assert it in answer to the city's third-party complaint. We need not decide whether or not such noncompliance can be waived, for it is enough to observe that the assertion of such noncompliance would more properly be a matter of defense for the city rather than the surety. The determinative question for decision, rather, is whether under any factual circumstance provable under the pleadings the city is obligated to pay the subcontractor as a result of the general contractor's negligence or nonperformance of its contract.

[5] Neither Tichich nor Olson has any claim to personal indemnity for any liability that might be imposed upon either of them individually, of course, for the reason that neither of them is a party to or a beneficiary of the bond; and, like Grazzini itself, neither of them asserts any claim against the surety.

recover for the negligence or nonperformance of anyone other than its general contractor and then only if the city is actually required to pay for the contractor's negligence or nonperformance.

The city alternatively argues that Builders Clinic could be found to have acted as a volunteer in undertaking additions to the contract and that the city would then have a quasi-contractual liability for the enhanced value of its building. Even so, no action would lie under the construction bond. The bond undertakes protection only against the city's loss and damage, but the implication of any such quasi-contractual liability would be that the city had, on the contrary, received a benefit. And absent the requisite notice of claim by the subcontractor itself under § 574.31, the city would have no obligation to the subcontractor for which the surety is required to respond.

Affirmed.